IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENT L. MILLER, | ) |
| Plaintiff, | ) |
| | ) No. 02 C 2286 |
| v. | ) Judge Joan H. Lefkow |
| AMERITECH CORPORATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brent L. Miller ("Miller") filed this action against defendant Ameritech Corporation ("Ameritech"),[1] alleging that Ameritech violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate his disability, by terminating him because of a protected disability, and by retaliating against him for filing an EEOC complaint by terminating his employment. Miller also asserts a state law claim of retaliatory discharge under the Illinois Workers' Compensation Act ("IWCA"). Before the court are Ameritech's motion for summary judgment and motion to strike. For the reasons stated below, the court grants in part and denies in part Ameritech's motion to strike and grants Ameritech's motion for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part

---

[1] Miller incorrectly sued Illinois Bell Telephone Company, d/b/a Ameritech Illinois, k/n/a SBC Illinois as "Ameritech Corporation." For purposes of clarity, however, the court will refer to defendant as Ameritech.

of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## I. MOTION TO STRIKE

Before deciding whether a genuine issue of material fact exists with regard to Miller's claims, the court must address Ameritech's motion to strike and objections to Miller's statement of additional facts.[2]

### A. Local Rule 56.1

Local Rule 56.1(a) provides that a motion for summary judgment must include, *inter alia,* a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." This statement of material facts

---

[2]Ameritech also submitted a reply to Miller's response to its Local Rule 56.1 statement of material facts. The local rules do not contemplate such a reply. *See Board of Educ. of Twp. High Sch. Dist. No. 211 v. Michael R.*, No. 02 C 6098, 2005 U.S. Dist. LEXIS 17450, at *4 (N.D. Ill. Aug. 15, 2005). Therefore, the court will disregard Ameritech's reply in deciding whether summary judgment is appropriate.

"shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Part (b) of Local Rule 56.1 requires a party opposing summary judgment to file a concise response to the movant's statement of material facts. The rule is very clear that "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B). The responding party may not include additional facts in its response to the movant's statement of material facts; instead, the responding party must file a statement of additional facts. Local Rule 56.1(b)(3)(B). *See also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Rule 56.1(b)(3)(B) provides the *only* acceptable means of . . . presenting additional facts.") (citation and internal quotations omitted) (emphasis in original). It is also improper to include legal argument or legal conclusions in the Local Rule 56.1 statements of material facts and responses thereto. *See Cady v. Miss Paige, Ltd.*, No. 02 C 4867, 2004 U.S. Dist. LEXIS 7613, 2004 WL 1144044 (N.D. Ill. Apr. 30, 2004) ("Local Rule 56.1 . . . emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of fact.").

Ameritech objects to Miller's responses to ¶¶ 21, 48, 60, 61, 73-76, 79, 95, 102, and 103, arguing that Miller failed to offer any admissible evidence that contradicts or rebuts the evidence cited in Ameritech's statement of material facts. The court agrees that Miller failed to offer admissible evidence contradicting the evidence cited by Ameritech in ¶¶ 21,[3] 48, 60, 61, 73, 79, 102,

---

[3] For example, in paragraph 21 of its statement of facts, Ameritech states, "Miller considered the general duties and physical requirements listed on 'Ameritech job briefs and qualifications' for Cable Splicing Technicians to be essential functions of the job," citing Miller's deposition at pages 81 and 82. In response, Miller disputed the statement, citing to pages 81 through 84 and 110 through 116 of his deposition. The court's review of the evidence cited by Ameritech in support of the statements contained in paragraph 21 reveals that Miller responded as follows when asked about which of the duties and physical requirements he considered to be essential functions of the cable

and 103. Accordingly, the court strikes Miller's responses and deems admitted the facts contained in those paragraphs.

As for paragraph 74, it appears that Ameritech's citation includes multiple citation errors. Rather than citing to exhibit 36, paragraph 74 cites to exhibit 3. If this were its only error, the court would not penalize Ameritech. Every other paragraph referring to Dr. Elias's testimony refers to exhibit 36, and all of the other paragraphs on that page refer to exhibit 36. Paragraph 74, however, is not supported by exhibit 36, pages 112-113. Ameritech has not moved to file a corrected statement of facts or amend its statement of facts. Accordingly, the court will not consider the facts contained in paragraph 74 in its analysis because they are not supported by the cited materials. The court also denies Ameritech's motion to strike Miller's responses to paragraphs 75, 76, and 95 because Miller's responses sufficiently disputed the statements contained in Ameritech's statement of facts.

Ameritech objects to Miller's inclusion of additional statements in his response to Ameritech's statement of material facts in ¶¶ 9, 18, 20, 50, 73, 100, 102, and 103. The court agrees that ¶¶ 9, 18, 20, 50, and 100 contain additional facts and arguments in violation of the local rules. *See Malec, supra,* 191 F.R.D. at 584. The court strikes such statements. The court has already stricken Miller's responses to paragraphs 73, 102, and 103 in their entirety.

---

splicing job: "Basically everything in section one [of Ameritech's job briefs and qualifications for Cable Splicing Technicians], general duties, and everything in physical requirements with the exception of you don't every day run into 100 pound things and you don't every day work in confined spaces and you don't every day use a pole or a ladder." Def. Ex. 2 at 81-82. Miller was then asked, "But you understood that they needed you to do those functions and have the ability to do those functions on any given day that you might be working, right?" He responded, "Yes." Def. Ex. 2 at 82. Miller was asked further, "So you understood that those were part of the essential functions of the job because you might have to do those on any given day, right?" Following an objection to the form of the question, Miller answered, "Yes." The numerous pages of testimony cited by Miller in response attempt to qualify Miller's admission but do not contradict the evidence cited in Ameritech's paragraph 21. Accordingly, the court strikes Miller's response to paragraph 21.

Additionally, Ameritech objects to narrative statements contained in Miller's responses to ¶¶ 22, 30, 42, 50, 57, 58, 59, 62, 71, 72, 77, 78, 82, 85, 86, 88, 89, 90, 97, 105, and 106. The court agrees that these paragraphs contain improper narratives or attempts to qualify otherwise undisputed materials and, accordingly, strikes the narrative statements.

Ameritech objects to Miller's responses to ¶¶ 20, 48, 57, 61, 88, 89, and 101 because Miller cites to his affidavit as evidence contradicting his own deposition testimony. Miller's affidavit does not contradict his deposition testimony with respect to his response to paragraph 20; however, his cited evidence does not contradict Ameritech's statement of fact in paragraph 20. At the same time, Ameritech's cited evidence does not establish that heavy lifting of 60 to 70 pounds was a requirement of the job of a cable splicing technician. It establishes, instead, that heavy lifting of objects weighing 60 to 70 pounds was involved in Miller's job. As a result, the court will not strike Miller's response to paragraph 20. The evidence cited by Miller with respect to paragraph 61 does not contradict the fact that Miller never communicated to the Social Security Administration ("SSA") that his disability had ceased. Miller's cited evidence only states that during his visit to the SSA, he informed the SSA employees that he desired to return to work at Ameritech either on light duty or as a cable splicing technician assigned to work in a bucket truck who would not be required to lift heavy objects without assistance. *See* Pl. Ex. 1 at ¶¶ 10-11. The court has considered and stricken paragraphs 48, portions of paragraph 57, paragraph 61, and portions of 88 and 89 already.

Paragraph 101 presents a slightly more complicated issue. Miller was asked the following questions during his deposition: "Since you indicated that you were able to do most any job, other than ones that involve climbing ladders and lifting weights or heavy weights, 100-pound weights, do you feel you were substantially limited in any major life activity at the time of your discharge?"

5

Miller responded, "No. I mean, obviously I still had pain, and those things were slightly affected, but majorly affected, no." Def. Ex. 2 at 362. Miller was then asked, "So you felt you were not substantially limited in any major life activity at the time of your discharge, right?" He answered, "Correct." Def. Ex. 2 at 362-363. Paragraph 101 states, "Miller was not substantially impaired in any major life activity in 1998," citing to Miller's admission in his deposition. Miller, however, disputes paragraph 101, citing to his affidavit. His affidavit states, in relevant part, "Since 1993, including during 1997 and 1998, these conditions substantially impaired by [*sic*] ability to engage in sexual relations, urinate, walk long distances, stand or sit for long periods of time, climb ladders safely and drive long distances." Pl. Ex. 1 at ¶ 6.

It is well-settled that parties cannot create a genuine issue of material fact and avoid summary judgment "by creating 'sham' issues of fact with affidavits that contradict their prior depositions...." *Ineichen v. Ameritech*, 410 F.3d 956 at 963 (7th Cir. 2005), quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). In this case, Miller attempts to blame his admission on the failure of Ameritech's counsel to provide a definition of "substantially limited" or "any major life activity." *See* Pl.'s Response at 3. Miller has not cited to any authority for the proposition that counsel must define terms for deponents when the deponent has not demonstrated a lack of understanding, nor has Miller even stated, in his affidavit or otherwise, that he did not understand the questions. Accordingly, the court strikes Miller's response to paragraph 101 and paragraph 6 of Miller's affidavit because his affidavit contradicts his prior deposition testimony and Miller has not provided an explanation as to the discrepancies. *See Stinnett v. Iron Works Gym/Exec. Health Spa*, 301 F.3d 610, 615 (7th Cir. 2002) (holding that district court did not err in striking portions of the plaintiff's affidavit that conflicted with his prior deposition

testimony in the absence of an explanation as to those discrepancies).

### B. Miller's Affidavit

Ameritech also raises numerous objections to Miller's affidavit and moves that it be stricken. First, Ameritech argues that Miller's affidavit fails to satisfy Rule 56(e), Fed. R. Civ. P., which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Although Miller did not have his affidavit notarized, he signed his affidavit under penalty of perjury attesting that the facts contained in his affidavit were true. Miller's affidavit is sufficient and Ameritech's objections in that regard are overruled. *See* 28 U.S.C. § 1746 (permits unsworn affidavits if made "under penalty of perjury" and verified as "true and correct"). Ameritech argues further that the matters asserted in paragraphs 8, 9, 11, 13, and 14 were not based on Miller's personal knowledge. The court disagrees. Each paragraph refers to conversations in which Miller participated or his observations and perceptions.

Second, Ameritech argues that the statements made by Miller in paragraphs 8, 9, 11, 13, and 14 of his affidavit contain inadmissible hearsay. The court disagrees with Ameritech's contention that paragraphs 8, 9, and 11 are hearsay because Miller is not offering the content of these statements for their truth. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). For example, in paragraph 8, Miller states, "When I asked whether I could be transferred to a work site closer to my home, Jasczewski replied, 'Just because you got hurt on the job and you move you think we have to transfer you. I suppose if you moved to fucking Paris, we would have

7

to transfer you there as well.'" Pl. Ex. 1 at ¶8. Miller's question to Jasczewski is not hearsay because he is asking a question, not making an assertion. *See* Fed. R. Evid. 801(a) ("A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person if it intended by the person as an assertion."). As for Jasczewski's reply, Miller is not offering it to prove the truth of the matter asserted, *i.e.*, that just because he got hurt on the job and moved Miller thinks that Ameritech has to transfer him. Instead, Miller is offering these statements to show motive. *See U.S. v. Robinzine*, 80 F.3d 246 at 252 (7th Cir. 1996) (statements containing no assertion of fact that could be true or false were not hearsay because their significance "was *that* they were said (i.e., that a 'verbal act' occurred) and how they affected [the listener], not the truth-value of what was said.") (emphasis in original); *U.S. v. Bursey*, 85 F.3d 293 at 296 (7th Cir. 1996) ("[S]tatements that are not offered to prove 'the truth of the matter asserted,' but for some other legitimate purpose, do not qualify as hearsay.") (citations omitted). The court agrees, however, that paragraphs 13 and 14 contain inadmissible hearsay. Accordingly, the court strikes the last sentence of paragraph 13 and paragraph 14 in its entirety. The stricken portions of these paragraphs are hearsay because they are out of court statements being offered for the truth of the matters asserted, and Miller has not identified any hearsay exception applicable to these statements.

C. **Ameritech's Responses to Miller's Statement of Additional Facts**

In response to Miller's statement of additional facts, Ameritech has raised numerous objections on hearsay grounds and Miller's failure to authenticate the documents to which his statement of additional facts refers as evidence. *See, e.g,* Ameritech's Response to Plaintiff's Additional Facts at ¶¶ 107, 108, 116, 117, 128, 129, and 130. Exhibit 2 purports to be Miller's semi-annual performance review; exhibit 3 purports to be a surveillance report; exhibit 4 purports to be

8

a note written by Marty "OD" on July 21, 1993; exhibit 5 purports to be an interoffice memorandum written by Kevin Kanter; exhibit 6 purports to be a letter from William Caputo; and exhibit 7 purports to be an EEOC determination. Miller appears to offer the contents of exhibits 2, 6, and 7 for the truth of the matter asserted therein without identifying any hearsay exception. Additionally, while Miller is not offering the other documents for their truth, he had not made any attempt to authenticate these documents. As such, the court will disregard these exhibits and their corresponding paragraphs in Miller's statement of additional facts. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) ("Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record at trial . . . ."); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) ("When a party presents evidence through . . . exhibits, they must be identified by affidavit or otherwise made admissible in evidence.").[4]

## II. FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

### A. Background

Ameritech hired Miller to work as a cable splicing technician on March 2, 1992. At that time, cable splicing technicians worked in two-person teams, and their duties included driving a

---

[4] By contrast, Miller cites to defendant's exhibit 6 as evidence that his attorney faxed Ameritech's attorney a copy of Dr. Elias' notes from March 20 and September 2, 1997. *See* Plaintiff's Statement of Additional Facts at ¶ 129. Counsel for Ameritech showed this document to Miller during his deposition, and the line of questioning surrounding this document during Miller's deposition established that the document was in Ameritech's possession. In addition, the cover page was on the letterhead of Miller's attorney and directed to counsel for Ameritech. The document also contains the marks of the date and fax number from the fax machine, demonstrating that the fax was sent. There is sufficient evidence of the fax's authenticity for the court to consider it for the purpose offered by Miller in paragraph 29. *See Miller v. Whipker*, 2004 U.S. Dist. LEXIS 13935 at *12-13 (S.D. Ind. Mar. 31, 2004).

company truck, using ladders and safety equipment, possessing splicing abilities, and having knowledge of color codes and the use of certain hand and power tools. These duties also required the ability to climb poles and ladders if a bucket truck was unavailable or unsuitable for a particular task and the ability to lift between 60 and 70 pounds. Team members generally assisted each other on the rare occasions that they needed to lift heavy objects. Although Miller was not assigned to a bucket truck, most of the work that Miller performed occurred in neighborhoods accessible by bucket trucks, and 90 percent of his co-workers had bucket trucks. Miller's job also did not require him regularly to lift objects weighing up to 100 pounds, work in confined spaces, or use a pole or ladder on a daily basis, but he understood that he needed to have the ability to perform those tasks on any day that he might work.

On December 9, 1992, Miller injured himself at work while lifting a terminal box. He subsequently underwent laparoscopic repair of a right inguinal hernia on January 21, 1993. Following surgery, Miller suffered from severe groin and testicular pain, severe pain during and after sexual intercourse, urine leakage, knee pain, back pain, hip pain, stomach ulcers, migraine headaches, weakness in his right leg, back spasms, and fibromyalgia. He also began to suffer from depression. These conditions persisted through 1997 and 1998.

Miller sought benefits under the IWCA on March 25, 1993 and was on workers' compensation leave until January 14, 1994, when he returned to work at Ameritech on a temporary light duty assignment. During this period, Miller's duties included preparing reports, filing documents, printing blueprints, and helping to prepare the workload for other employees.

During this period also, Miller perceived that his supervisor, Jevan Jaszewski, acted towards Miller in a hostile manner. Miller commuted approximately 90 minutes to and from work each day,

which caused him a great deal of pain. As a result, he asked Jaszewiski if he could be transferred to a work site closer to his home. In response, Jasczewski replied, "Just because you got hurt on the job and you move you think we have to transfer you. I suppose if you moved to fucking Paris, we would have to transfer you there as well." Miller also asked Kevin Kanter, the Ameritech Human Resources official responsible for administering workers' compensation, whether he could be transferred because the long commute was aggravating his medical condition. Kanter informed Miller that he would not be transferred and also complained to Miller about the number of medical bills that Ameritech had to pay for Miller's treatment. On August 3, 1994, Miller returned to workers' compensation leave to undergo further surgery. On January 9, 1998, Miller settled his workers' compensation claim with Ameritech. In the settlement, Miller and Ameritech agreed that Miller was temporarily totally disabled from February 1, 1993 to January 13, 1994 and from August 3, 1994 to May 9, 1996. The parties agreed that Miller would receive workers' compensation payments for the remaining 29.8 years of his alleged incapacity to pursue his employment. Miller later received a letter from Ameritech dated April 1, 1998, stating, "Ameritech has recently reviewed the terms under the Workers' Compensation Settlement contract you signed on January 9, 1998. Due to your acknowledged incapacity to pursue employment, your service with Ameritech has been terminated effective January 9, 1998."

### B. Social Security Disability Insurance Benefits

On March 18, 1993, Miller filed an Application for Disability Insurance Benefits with the SSA. In his application, he claimed that he was unable to work because of his disabling condition. He also agreed to notify the SSA if his medical condition improved such that he would be able to work even if he had not yet returned to work. The SSA initially denied Miller's claim for disability

11

benefits but later determined that Miller was disabled and entitled to disability insurance on December 22, 1994.

Miller underwent a residual physical functional capacity assessment on November 30 and December 1, 1995. This assessment revealed that Miller's exertion level was less than sedentary and that he was unable to lift, carry, bend, stoop, kneel, walk, climb stairs or sit for more than 20 minutes at a time. Miller submitted a Report of Continuing Disability to the SSA on January 20, 1998, stating that he has a lifting restriction, that walking long distances or for a long period of time was painful and nearly impossible, and that he still had the same limitations as set forth in his functional capacity assessment. Miller also indicated that he might be able to perform light sedentary work and undergo vocational rehabilitation but that he was unsure whether he would be able to do full-time work. Miller never informed the SSA that his disability had ceased; yet the SSA determined that he was no longer disabled as of May 1998 and stopped providing him benefits as of July 1998. Relying on conversations that he had with an SSA employee, Miller had believed that he was entitled to receive social security disability benefits until he was released to work or until he obtained gainful employment.

### C. Medical Treatment and Assessment

Miller began receiving treatment from Dr. Sarmed Elias, an orthopedic surgeon, on May 16, 1995. On March 20, 1997, Dr. Elias noted the following on Miller's chart:

> [D]o [sic] to his lingering symptomatology and being as it is that he has plateaued, I feel he has reached maximum medical improvement, and I would recommend that he proceed to a vocational program in order for him to return to gainful employment, which may also entail another work capacity evaluation down the line.

Def. Ex. 6. The vocational program to which Dr. Elias referred would have involved an evaluation

of Miller by a vocational rehabilitation expert to determine whether Miller could return to his job as a cable splicing technician or whether he needed to be retrained for another job.

As of March 20, 1997, Dr. Elias did not know whether Miller could return to work as a cable splicing technician but he believed that Miller was able to perform sedentary work with certain restrictions. These restrictions included not lifting more than 10 pounds, taking frequent breaks from sitting and standing, not performing repetitive bending, stooping, or climbing, not climbing ladders or climbing into manholes, and not walking more than a quarter mile. These restrictions remained unchanged from March 20, 1997 until Miller's termination in April 1998. As far as Dr. Elias knew, Miller was unable to return to work as a cable splicing technician in 1997 and 1998, with or without an accommodation.

On March 13, 1998, an assistant to Dr. Elias prepared and submitted a form to the SSA regarding Miller's claim for disability benefits. Dr. Elias reviewed the form and verified that it was complete and accurate. The form stated that Miller had increased pain when sitting and standing for long periods of time, he had difficulty walking more than 50 feet, and that he could not lift more than 10 pounds.

Miller also received chiropractic treatment from Dr. David P. Tyggum, a colleague of Dr. Elias. In a Progress Note dated March 17, 1997, Dr. Tyggum highly recommended a vocational rehabilitation program and a return to light duty employment for Miller. Other than the March 19, 1997 progress note written by Dr. Tyggum and the March 20, 1997 note written by Dr. Elias, Miller is unaware of any other notes from his physicians releasing him to return to work.

On March 30, 1998, James A. Brooks, Ph.D, a licensed clinical psychologist, examined Miller and prepared a report for the SSA regarding Miller's claim for disability benefits. Dr. Elias

reviewed Dr. Brooks' report and concurred with its finding that Miller had realized, as of March 30, 1998, that he was incapable of returning to the type of work that he had done before but that he wanted to work and felt that he was capable of performing light duty work. Miller had informed Dr. Brooks that he was not able to return to the type of work that he had done before.

### D. Charge of Discrimination

In March of 1997, Miller asked his attorney to inform Ameritech that he wished to return to work if he were granted certain accommodations. Specifically, Miller wanted to be assigned to a bucket truck and to not be required to climb ladders or to lift more than seventy pounds without assistance.[5] On September 11, 1997, Miller's attorney faxed Ameritech's attorney a copy of Dr. Elias' March 20 and September 2, 1997 notes regarding Miller. Miller never directly requested any accommodations from Ameritech and, in fact, never had any contact with anyone at Ameritech after 1996 regarding his workers' compensation claim or return to work. During his deposition, Miller also admitted that he was not substantially limited in any major life activity in 1998 and that he was not able to climb ladders or lift heavy objects without assistance in April 1998, which were essential functions of his job.[6] Similarly, Dr. Elias did not believe that Miller was substantially limited in terms of seeing, hearing, speaking, breathing, learning, performing manual tasks, and in his ability to perform light duty jobs.

---

[5] On numerous occasions in his statement of additional facts and in his response brief, Miller refers to his conversations with his attorney and what his attorney told him during those conversations as evidence that his attorney informed Ameritech of Miller's desire to return to work and of Ameritech's refusal to return Miller to work. *See, e.g.,* ¶¶ 125, 126. As discussed above, these statements are hearsay because Miller is offering what his attorney told him as evidence of truth of the matters asserted. In addition, Miller's belief that one of his attorney's provided his doctors' notes to Ameritech is not admissible evidence because he has no personal knowledge of whether such notes were provided to Ameritech. *See* ¶ 125. Accordingly, the court cannot consider such inadmissible evidence on a motion for summary judgment.

[6] *See, supra,* note 3.

Miller filed a charge of discrimination with the Illinois Department of Human Rights on July 16, 1997, alleging that his doctor had released him to return to light duty work and that Ameritech refused to reinstate him. Miller also provided the March 1997 reports of Dr. Elias and Dr. Tyggum to the EEOC. On April 2, 1998, the day after Ameritech informed Miller that his employment was terminated, Ameritech filed its position statement with the EEOC in response to Miller's charge of discrimination.

## III. DISCUSSION

### A. Disability Discrimination and Failure to Accommodate

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). In addition, "[t]he Act also provides that an employee discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir. 2000), quoting 42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case of discrimination, Miller must show that (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he has suffered from an adverse employment decision because of his disability. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669-70 (7th Cir. 2000).

Under the ADA, a disability is (a) a physical or mental impairment that substantially limits

one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Miller argues that his disability falls within category (a), which requires that he show (1) he suffers from an impairment; (2) the impairment affects major life activities; and (3) the impairment "substantially limits" such major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000).

In this case, Miller admitted during his deposition that he was not substantially limited in any major life activity. This admission is fatal to Miller's claims under the ADA. Dr. Elias also testified that Miller was not substantially limited in any major life activity.[7] Miller has since asserted in his affidavit opposing Ameritech's motion for summary judgment that his medical conditions have substantially impaired his ability to engage in sexual relations, urinate, walk long distances, stand or sit for long periods of time, climb ladders safely and drive long distances, but these assertions directly contradicted his previous admission and, accordingly, were stricken.

Even if the court were to consider his newly asserted claims of his impaired ability to engage in what the court will assume are major life activities, Miller has failed to offer any evidence establishing that he was substantially limited in any major life activity when compared to the general population. The term "substantially limited" means

---

[7]Miller has since objected to the fact that counsel for Ameritech provided Dr. Elias with a narrow list of major life activities. The court rejects Miller's arguments in that regard. In response to Dr. Elias' request for clarification as to the meaning of a major life activity, counsel for Ameritech stated, "Major life activities can include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Def. Ex. 36 at 21. Dr. Elias responded, "The answer is no." *Id.* The question was clear that it was not an exhaustive list of major life activities. Moreover, the court finds Miller's selective exclusion of walking and working from the major life activities mentioned to Dr. Elias a telling admission of the damage inflicted by Dr. Elias' testimony to Miller's claims under the ADA. *See* Plaintiff's Response to Defendant Ameritech's Local Rule 56.1 Statement and Statement of Additional Facts that Require Denial of Summary Judgment at ¶ 100.

16

unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i). Factors to be considered in determining whether an individual is substantially limited in a major life activity include (i) the nature and severity of the impairment; (ii) the expected duration of the impairment; and (iii) the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Miller has failed to address any of these factors and has offered only the conclusional assertion in his affidavit that his medical conditions substantially impaired his ability to engage in sexual relations, urinate, etc. This assertion is insufficient to create a genuine issue of material fact as to whether Miller was a qualified individual with a disability under the ADA. *See Basith v. Cook County*, 241 F.3d 919, 928 (7th Cir. 2001) ("[C]onclusory allegations and self-serving affidavits, unsupported by the record, will not preclude summary judgment.") (citation omitted).

Because Miller has failed to establish that any of his impairments substantially limited any major life activity, he cannot establish a *prima facie* case for his claims of disability discrimination and failure to accommodate.[8] Ameritech is therefore entitled to summary judgment on Miller's claims of disability discrimination and failure to accommodate.

B.   **Retaliatory Termination**

Miller has presented no direct evidence that he was terminated in retaliation for filing a charge with the EEOC. Thus, he must proceed under the indirect burden-shifting method of proof

---

[8]Because this issue is dispositive, the court finds it unnecessary to address Ameritech's remaining arguments with regard to Miller's claims under the ADA.

17

established by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 804, 36 L. Ed. 2d, 93 S. Ct. 1817 (1973). *See DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir.1995) (applying the *McDonnell-Douglas* method to ADA cases). Under this method, a plaintiff must first establish a *prima facie* case of retaliation by showing "that (1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 897 (7th Cir. 2003), quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under the indirect method, the plaintiff does not need to show "even an attenuated causal link." *Haywood v. Lucent Techs.*, 323 F.3d 524, 531 (7th Cir. 2003). If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for the adverse employment action." *Id.* "Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual." *Id.* At all times, the burden of persuasion rests with the plaintiff. *Id.*

While Miller suffered an adverse employment action in that he was terminated, his claim of retaliation fails because Miller did not establish that he was treated less favorably than other similarly situated employees who did not complain. Miller has offered no evidence regarding similarly situated employees or their treatment. In fact, Miller essentially conceded his lack of evidence in response to Ameritech's statement of facts. *See* Plaintiff's Response to Defendant Ameritech's Local Rule 56.1 Statement and Statement of Additional Facts that Require Denial of Summary Judgment at ¶¶ 32-39. Miller failed to respond to Ameritech's arguments regarding his failure to establish a *prima facie* case of retaliation under the ADA and failed to cite to any legal authority in

support of his claim of retaliation under the ADA. Thus, Ameritech is entitled to summary judgment on Miller's claim of retaliation under the ADA.

### C. State Law Claims

Because the court has dismissed the claims over which it had original jurisdiction, the court declines to exercise its supplemental jurisdiction over Miller's state law claim and dismisses it without prejudice. *See Bilow v. Much Shelist Freed Denenberg Arment & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001).

### ORDER

For the reasons stated above, the court grants in part and denies in part Ameritech's motion to strike [#47] and grants Ameritech's motion for summary judgment [#33]. This case is terminated.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 14, 2005